IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| MICHAEL HARDY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 2:08cv15-MHT |
| ) | (WO) |
| J. WALTER WOOD, JR., ) | |
| individually and in his ) | |
| official capacity as ) | |
| Executive Director of ) | |
| the Alabama Department ) | |
| of Youth Services, ) | |
| ) | |
| Defendant. ) | |

OPINION

Plaintiff Michael Hardy brought this action in state court asserting that defendant Walter Wood, Jr., Executive Director of the Alabama Department of Youth Services (DYS), violated his procedural due-process and free-speech rights, as contained the United States Constitution and enforced through 42 U.S.C. § 1983, when Wood dismissed him in relation to sexual-harassment allegations made against him by a coworker.  Hardy also

asserts a state-law fraud claim against Wood relating to his dismissal. Hardy brings these claims against Wood in both his individual and official capacities. Wood removed this case to federal court pursuant to 28 U.S.C. §§ 1331 (federal question), 1441 (civil rights) and 1367 (supplemental).

This matter is now before the court on Wood's motion for summary judgment. For the reasons set out below, the motion will be granted.

## I. Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, at which point the

burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. Background

Hardy was a Youth Services Counselor I, a supervisory position, with DYS until he was terminated on January 6, 2006. One of the employees that he supervised was Tera McMillian, a Youth Services Aid.

On approximately June 12, 2005, McMillian reported to DYS Personnel Director Debra Spann that Hardy had been sexually harassing her, creating a hostile work environment. She claimed that Hardy propositioned her in explicit ways, touched her inappropriately, and even went to her house once, making inappropriate sexual requests.

On July 12, 2005, McMillian filed a charge of discrimination with the Equal Employment Opportunity Commission, detailing the allegedly hostile work environment created by Hardy. On July 14, Hardy filed a "grievance" against McMillian claiming that she made "unsubstantiated derogatory statements" against him and had encouraged other employees to file false charges against him.

4

On November 3, 2005, Personnel Director Spann delivered a memo to the DYS legal division and Executive Director Wood finding that McMillian's claims were valid and Hardy should be terminated. That same day, DYS Deputy Director Tim Davis advised Wood that he had consulted with the DYS legal division and concluded that Hardy should be terminated.

On November 4, Wood sent Hardy a letter informing him of the recommendation that disciplinary action be taken against him. Wood explained the reasons behind the recommendation; informed Hardy of the specific rules he had allegedly violated; and told him that there would be a hearing to determine whether disciplinary action was needed, at which time Hardy would be allowed to present evidence, produce witnesses and be represented by counsel.

At the November 15 hearing, Hardy appeared with his attorney and denied all claims, saying that nothing untoward occurred with McMillian. He also submitted oral

testimony that McMillian had fabricated the claims against him and suggested that her motive in filing a false claim was her need to get a shift change so that she could make it to a second job on time. DYS investigated this allegation and confirmed that McMillian did have a second job.

In the end, the DYS hearing officer rejected Hardy's defense and concurred with Spann's recommendation. In a letter to Wood, the hearing officer explained that questions existed about McMillian's need to get a shift change because of her second job but that it was not necessary to investigate these factual issues further because Hardy's attempt to file a retaliatory "grievance" against McMillian constituted a ground for dismissal.

On January 6, 2006, based on the recommendations from Spann, Davis and the hearing officer, Wood sent Hardy a letter terminating his employment.

Following his dismissal, Hardy requested a hearing before the State Personnel Board. This hearing took

6

place on May 8, and July 10, 2006. In the end, the administrative law judge concluded that there existed sufficient evidence to support Hardy's dismissal. The Personnel Board adopted the administrative law judge's holding and found that, although McMillian was not a credible witness, Hardy's response to the allegations was inappropriate. The Personnel Board affirmed Hardy's dismissal.

Hardy appealed the Personnel Board's decision to state court (a state-court proceeding separate from the one that initiated the instant case), where, on March 12, 2008, the trial court reversed the Personnel Board's ruling and ordered that Hardy be reinstated, with full back pay and all benefits that would have accrued had he never been terminated. The Personnel Board has appealed the trial court's decision to the Alabama Court of Civil Appeals, which has not yet issued a ruling.

## III. Statute of Limitations

In Wood's motion for summary judgment, he claims that the statute of limitations had run on Hardy's fraud and § 1983 claims when he filed this action in state court. 1975 Ala. Code § 6-2-38, <u>McNair v. Allen</u>, 515 F.3d 1168, 1173 (11th Cir. 2008) (applying two-year statute of limitations to § 1983 claims filed in Alabama).  Wood argues that Hardy received the letter that terminated his employment on November 4, 2005, and did not file this action in state court until November 9, 2007.  This is an inaccurate depiction of the facts.  The letter that Hardy received in November 2005 did not terminate his employment; it merely notified him that charges had been made against him and that a hearing would be held to determine if disciplinary action was needed.  In fact, in his answer to the complaint in this litigation, Wood admits that Hardy was not terminated until January 6, 2006.  Using this date as a starting point, Hardy's

filing on November 9, 2007, was well-within the two-year statute of limitations.

## VI. Fraud

In his complaint, Hardy asserts that Wood committed fraud in the investigation and hearing held concerning McMillian's complaint and his dismissal. He alleges that Wood's investigations were contrived and otherwise not even conducted; that Wood willfully failed to document, and even concealed, essential facts that would have supported Hardy's defense; and that he even contrived, in some manner, the charges against Hardy.

To prove a claim of fraud, the plaintiff must show the following: (1) that the defendant made a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon the false representation; and (4) that the plaintiff was damaged as a proximate result of his reliance upon the false representation. George v.

Associated Doctors Health & Life Ins. Co., 675 So.2d 860, 862 (Ala. 1996).

To support his claim, Hardy has submitted only a very brief affidavit and a copy of the state court's opinion holding in his favor. Neither document presents any evidence, or even mentions the possibility, that Wood or anyone else committed fraud in relation to Hardy's dismissal. As explained above, to survive a motion for summary judgment, the non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed. R. Civ. P. 56(e). Hardy has offered absolutely no evidence for this court to look to in evaluating his fraud claim. Wood's motion for summary judgment will be granted on Hardy's fraud claim.

## VII. Denial of Due Process

In his complaint, Hardy asserts that he was not afforded due process in his termination. It is unclear

from the complaint as a whole whether Hardy claims that his due-process rights have been violated both before and after his termination or simply before; either way, his claim clearly fails.

Regarding predeprivation due process, "a tenured public employee is entitled to oral and written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546 (1985).  Hardy presents no evidence to suggest that he was denied any of these three procedures. Although the complaint states generally that the November 15 hearing was insufficient, when asked at the pretrial hearing held on the record on October 27, 2008, Hardy's attorney could not articulate any process owing to Hardy that had been denied.  On the contrary, the evidence offered by Wood demonstrates clearly that the November 4, 2005, letter gave Hardy written notice of the charges against him; that DYS's evidence against him was

explained at the hearing and in his conversations with Spann; and that Hardy had an opportunity to present his side of the story at the hearing, where he was even represented by counsel.  Hardy clearly received all the predeprivation process due him.

As to his postdeprivation due-process rights, Alabama has available a satisfactory means by which Hardy can seek redress for any procedural due-process problems: review in state court.  See Bell v. City of Demopolis, Ala., 86 F.3d 191 (11th Cir. 1996) (stating that review in the Alabama state courts provided constitutionally sufficient postdeprivation due process for plaintiff claiming wrongful termination). Hardy is currently pursuing remedies in state court.  He appealed DYS's decision to the Alabama State Personnel Board, which affirmed DYS's decision to dismiss him; he then appealed that decision to the state court, which ordered that he be reinstated to his position, with back pay and full benefits, as if he had never been dismissed.  Hardy

cannot be heard to argue a denial of postdeprivation due process where he has, in fact, been granted ample access to the Alabama state courts. Wood's motion for summary judgment will be granted on Hardy's due-process claim.

## VIII. Violation of First Amendment Rights

In his complaint, Hardy asserts that his constitutionally protected freedom of speech has been denied because he was terminated for the filing of a grievance. In determining whether a government employee's speech should be protected, this court uses the four-part standard announced in Bryson v. City of Waycross, 888 F.2d 1562 (11th Cir. 1989), which examines (1) whether the employee's speech was a matter of public concern; (2) whether the employee's interest in speaking outweighs the government's legitimate interest in efficient administration; (3) whether the speech played a substantial part in the government's challenged employment decision; and (4) whether the government would

have made the same decision in the absence of the exercise of the protected speech.

"Whether a public employee's speech addresses a matter of public concern so as to be protected by First Amendment is determined by the content, form, and context of the statement." Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522, (11th Cir. 1997). The Supreme Court has cautioned, however, that, "When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick v. Myers, 461 U.S. 138, 147 (1983). Finally, "a public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions

14

are run." Ferrara v. Mills, 781 F.2d 1508, 1516 (11th Cir. 1986).

Hardy has not offered any evidence or any argument demonstrating that his speech was a matter of public concern. In his response to the motion for summary judgment, he merely states that, "Retaliation for exercising a constitutional[ly] protected right is, almost inherently, ... a matter of public concern." Opp'n def.'s mot. summ. j. (doc. no 32). As mentioned above, Hardy may not satisfy the public concern inquiry by merely invoking 'a supposed popular interest' in how public institutions are run. Moreover, Hardy's argument misses the point. He argues that the public would be interested in the retaliation taken against him for exercising his free speech. This says nothing about the actual issue: whether the content of the speech itself was a matter of public, or merely private, concern. Cf. Morgan v. Ford, 6 F. 3d 750, 755 (11th Cir. 1993) (demonstrating that court must look into the content of

15

the grievance itself to determine whether it is a matter of public concern).

Finally, Hardy has not actually submitted the grievance to the court for review or alleged the matter of public concern that it supposedly states. All the court knows is that the grievance asserted that the accusations against Hardy were false and that McMillian was encouraging others to file false accusations against him. The court sees no matter of public concern in this grievance and has seen no evidence to suggest that Hardy filed his grievance as anything other than an employee pursuing a personal interest in keeping his job. Cf. Morgan, 6 F. 3d at 755 (holding that where employee filed a grievance due to "self-interest in improving the conditions of her employment," the grievance was not a matter of public concern.) As such, Hardy has failed to raise a genuine issue of material fact warranting a trial on whether his speech was protected by the First

Amendment.  Wood's motion for summary judgment will be granted on Hardy's free-speech claim.

## IX. Qualified Immunity

Wood raises a qualified-immunity defense to all Hardy's constitutional claims. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Several steps must be taken in analyzing a qualified immunity defense.  First, the defendant must demonstrate that he was performing a discretionary function. Holloman ex rel. Holloman v. Harland, 370 F. 3d 1252, 1263 (2004).  If the defendant so demonstrates, then the burden shifts to the plaintiff to show (1) that the defendants violated a constitutional or statutory

17

right; (2) which was clearly established at the time; (3) of which a reasonable person would have known.  <u>Id.</u>; <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001) (establishing that the "first inquiry must be whether a constitutional right would have been violated on the facts alleged").

To show that he was performing a discretionary function, Wood must demonstrate that in firing Hardy he was "performing a legitimate job-related function ... through means that were within his power to utilize." <u>McCoy v. Webster</u>, 47 F. 3d 404, 407 (11th Cir. 1995).  It is undisputed that Wood followed standard DYS procedure in appointing a hearing officer to review the information and make a recommendation to him; it is also undisputed that, as Executive Director of DYS, Wood has the ultimate authority to hire and fire employees.  Therefore, in firing Hardy on the hearing officer's recommendation, Wood was performing a job-related function through means within his power to utilize.  Having established the applicability of qualified immunity, the court moves to

the next step, which is to analyze whether Hardy has demonstrated any constitutional violations. As explained above, Hardy has not demonstrated that Wood violated any of his constitutional rights. Therefore, the analysis stops here, and it is unnecessary to ask whether the rights in question were clearly established at the time.

***

Beyond the conclusory allegations in his complaint, Hardy has presented no evidence to support any of his claims. In fact, all the evidence offered by Wood suggests that no fraud was committed; that Hardy was given ample process before and after his termination; and that his speech was not a matter of public concern. As such, Woods motion for summary judgment will be granted as to all of Hardy's claims.

An appropriate judgment will be entered.

DONE, this the 30th day of October, 2008.

                            /s/ Myron H. Thompson  
                          UNITED STATES DISTRICT JUDGE